[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 124.]

CINCINNATI BAR ASSOCIATION *v*. REIS.

[Cite as *Cincinnati Bar Assn. v. Reis*, 1997-Ohio-354.]

*Attorneys at law—Misconduct—Indefinite suspension—Pattern of client neglect extending over several years.*

(No. 97-812—Submitted July 7, 1997—Decided October 22, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-82.

_____

{¶ 1} On March 29, 1996, relator, Cincinnati Bar Association, filed an amended complaint charging respondent, Margaret A. Reis of Cincinnati, Ohio, Attorney Registration No. 0023701, with violations of several Disciplinary Rules with respect to her representation of eight clients. After respondent answered, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court held a hearing in September 1996. On February 10, 1997, relator filed a second amended complaint charging respondent with the violation of Disciplinary Rules with respect to her representation of three other clients. The panel heard the additional matters on March 17, 1997, and respondent filed an answer.

{¶ 2} The panel found that in November 1993, respondent received a retainer of $900 from Penny J. Geary and agreed to represent her in obtaining additional child support and related matters. Respondent participated in mediation on Geary's behalf from December 1993 through March 1994. Thereafter, except for one telephone conversation with respondent in April 1994, Geary was unable to contact respondent. In August 1994, Geary, by letter, terminated respondent's services and requested the return of her file. Three months later, in November 1994, respondent returned the file to Geary. Geary employed a new attorney and received temporary increased child support within a month thereafter.

**{¶ 3}** In July 1993, Diana E. Ankenbaur employed respondent to represent her in a domestic relations action and paid her a $750 retainer. Respondent entered her appearance in the action and represented Ankenbaur from August 1993 until May 1994. Ankenbaur said that throughout the representation she was unsuccessful in numerous attempts by mail and by leaving phone messages to obtain any information from respondent about the status of her case.

**{¶ 4}** In September 1993, Josseline DeLatour paid respondent a $1,200 retainer and in November 1994 instructed respondent to file divorce papers. Respondent agreed to prepare the documents by February 1995. From February through April, DeLatour made numerous unsuccessful attempts to contact respondent by telephone and by regular and registered mail. On May 16, 1995, DeLatour contacted respondent, who agreed to return her file.

**{¶ 5}** In April 1993, Ruth B. Stuckey retained respondent. After Stuckey's divorce decree was granted in November 1994, she became unemployed and needed information regarding her former husband's 401(k) plan distributions. Between February 1995 and July 1995, Stuckey made thirteen unsuccessful attempts to contact respondent by telephone and wrote four letters to respondent that went unanswered. In June 1995, Stuckey requested that respondent return her file, which respondent failed to do in a timely manner.

**{¶ 6}** Jane M. Bastin, who had two children, Joseph and Steven, gave respondent a $100 nonrefundable retainer to represent her at a March 1995 hearing with respect to the counseling of her and her ex-husband and the determination of visitation rights with their children. Subsequently, Bastin gave respondent a $1,000 nonrefundable retainer to represent her in obtaining custody of the children. Early in May 1995, Bastin and her ex-husband agreed to settle matters involving their children. Despite numerous telephone attempts, Bastin could not contact respondent about the settlement until May 30. On June 6, 1995, respondent and the attorney for Bastin's ex-husband undertook to draft an agreed entry in accordance

with the settlement agreement. Respondent did not complete drafting the entry because Bastin had not paid the $580 in additional fees which she owed respondent. As a result, after June 6, 1995, Bastin continued to be held responsible for child support payments for her son, Joseph, even though she had custody of him. Bastin finally discharged respondent. On November 5, 1995, Jerome Charls, Bastin's new counsel, filed a motion to enforce the agreement, which had still not been filed. An order enforcing the agreement was entered on December 7, 1995, adjusting support payments that had been overpaid by Bastin and underpaid by her ex-husband.

{¶ 7} In December 1994, Doris Tribble employed respondent, paying her a $1,200 nonrefundable retainer, for advice with respect to child support and for the purpose of obtaining a divorce. Respondent filed the divorce complaint in January 1995. After a March 1995 hearing was continued because Tribble's husband failed to appear, Tribble was unable to contact respondent. In October 1995, Tribble discharged respondent and eventually obtained a $1,000 default judgment against respondent in small claims court.

{¶ 8} In March 1995, Karen Addie engaged respondent to represent her in regard to a divorce proceeding threatened by her spouse, who was a resident of Bethesda, Maryland. Addie gave respondent a $400 nonrefundable retainer. On July 6, 1995, Addie's husband filed the divorce complaint in Maryland, and Addie was given sixty days to respond. She was also given notice of a hearing in Maryland on September 13, 1995. Addie met with respondent on or about August 9, 1995 and supplied her with the Maryland papers. Thereafter Addie called respondent several times seeking information about her case, but respondent did not return the calls. On September 5, 1995, respondent wrote to the Maryland court and asked that Addie receive an extension of time to respond until she could retain a lawyer qualified to appear in Maryland. The letter was ineffective in postponing the hearing, and on September 19, 1995, Addie was notified that she was in default for failure to attend. Through Addie's own efforts, the default was later set aside.

After Addie discharged respondent and sued her in small claims court, respondent settled by paying Addie $430.

{¶ 9} Larry P. Taylor hired respondent in December 1994 to represent him in a divorce action. As part of the divorce settlement, Taylor quitclaimed his interest in a house to his wife, and her attorney forwarded to respondent a note for $38,000 payable to Taylor, supported by a mortgage on the house. Respondent did not transmit the note and mortgage to Taylor. In addition, after Taylor gave respondent $320 in November 1995 to be forwarded to his former wife's attorney for his daughter's college fund account, respondent failed to forward the funds. Respondent did not answer Taylor's numerous telephone calls and written inquiries about these matters.

{¶ 10} In March 1995, Elinore S. Malloy hired respondent to represent her in divorce proceedings. Although respondent performed preliminary services with respect to a separation agreement and a shared parenting plan, she never completed work on the documents and never filed for the divorce. Moreover, respondent was totally nonresponsive to repeated inquiries by Malloy.

{¶ 11} The panel found that the relator had failed to provide clear and convincing evidence with respect to two other complaints against respondent.

{¶ 12} Based on the foregoing facts, the panel concluded that, with respect to each of the above clients, respondent had violated DR 6-101(A)(3) (neglecting an entrusted legal matter), and 7-101(A)(1), (2), and (3) (failing to seek the lawful objectives of a client), (failing to carry out a contract of employment), (prejudicing or damaging a client during the course of a professional relationship). Additionally, the panel concluded that with respect to Penny Geary and Doris Tribble, respondent had violated DR 9-102(B)(4) (promptly delivering to a client when requested money or property which the client is entitled to receive); with respect to Geary, Tribble, and Ruth Stuckey, respondent had also violated DR 2-110(A)(2) (failing to deliver to the client all papers and property to which the client is entitled); with

4

respect to Jane Baslin and Karen Addie, respondent had also violated DR 9-102(A) (failure to deposit client funds in an identifiable bank account where no funds of the lawyer are deposited); with respect to Addie, respondent had also violated DR 6-101(A)(1) (handling a legal matter which she is not competent to handle), and with respect to Larry Taylor, respondent had also violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 13} After the panel heard from respondent's character witnesses, it recommended that she be indefinitely suspended from the practice of law in Ohio, with conditions for any reinstatement. The board adopted the findings and conclusions of the panel and recommended an indefinite suspension, and that, as a condition for any reinstatement, she be required to refund the following amounts to the following former clients: to Doris Tribble, $1,000; to Diana Ankenbaur, $500; to Ruth Stuckey, $500; to Josseline DeLatour, $500; and to Elinore Mallory, an itemized statement and return of any unused retainer fee. The board also recommended that as a second condition for reinstatement, respondent should take at least two continuing legal education courses on trust account management. As a third condition for reinstatement, the board recommended that within six months prior to her application for readmission, respondent undergo psychological evaluation and receive a satisfactory recommendation as to her ability to function as an attorney and that if she is readmitted, the relator monitor her practice for one year after reinstatement.

———————————

*Robert J. Gehring, Ann L. Lugbill* and *Stephen M. Nechemias,* for relator.
*John H. Burlew,* for respondent.

———————————

***Per Curiam.***

{¶ 14} Neglect of client matters reflects poorly not only on the lawyer involved, but also on the entire legal profession. *Disciplinary Counsel v. Sigall*

(1984), 14 Ohio St.3d 15, 14 OBR 320, 470 N.E.2d 886. As we have previously said, "Neglect * * * warrants disciplinary action contingent upon the severity and pervasiveness of the conduct." *Disciplinary Counsel v. Ball* (1993), 67 Ohio St.3d 401, 403, 618 N.E.2d 159, 161. In this case we observe a clear pattern of client neglect extending over several years with no mitigating circumstances.

{¶ 15} Respondent's repeated failure to fulfill her responsibilities as a lawyer warrants a sanction of indefinite suspension.

{¶ 16} Further, respondent's reinstatement to the practice of law will be subject to four conditions in addition to the requirements of Gov.Bar R. V(10)(B) *et seq.* First, before her reinstatement will be considered, respondent shall provide evidence that she has refunded the following amounts to the following former clients: to Doris Tribble, $1,000; to Diana Ankenbaur, $500; to Ruth Stuckey, $500; to Josseline DeLatour, $500; and to Elinore Susan Mallory, an itemized statement and return of any unused retainer fee. Second, before reinstatement is considered, respondent must provide evidence that she has attended at least two continuing legal education courses on trust account management. Third, before her reinstatement is considered, respondent shall demonstrate that within six months prior to her petition for reinstatement she was psychologically evaluated and received a satisfactory recommendation as to her ability to function as an attorney. Finally, if respondent is reinstated, the relator shall monitor her practice for one year after reinstatement. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————